IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ALEJANDRO PUIG**                                                                                   **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 3:17CV938 CWR-LRA**

**WARDEN L. SHULTS**                                                                        **RESPONDENT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Alejandro Puig files the instant petition for writ of habeas corpus

pursuant to Title 28 U.S.C. § 2241, seeking a reinstatement of good-conduct time credit.

Petitioner challenges disciplinary proceedings, resulting in, *inter alia*, the forfeiture of 41

days of good conduct time credit.  Respondent asserts the petition should be denied

because all due process requirements were met and there was sufficient evidence to

support the sanctions imposed.  Having considered the submissions of the parties and the

applicable law, the undersigned recommends that the petition be dismissed for the

reasons that follow.

Puig was confined in the Federal Correctional Institution in Estill, South Carolina,

when he was charged with Destroying and/or Disposing of Item During a Search or

Attempt to Search and Refusing to Obey an Order in violations of Codes 115 and 307.

On February 8, 2017, while receiving Federal Express deliveries on the back dock, BOP

Supervisor Brown observed Puig "walking extremely fast, looking around suspiciously,

carrying his green jacket that was balled up, very bulky, and protruding from his right

side as if he had contraband."  However, when Brown ordered Puig to approach so that

she could conduct a search, he looked directly at her and "started walking even faster,"

ignoring her orders to stop.  As Brown pursued Puig, she saw him "pass off" his green

jacket near a gray gate; but, when she searched the area, she was unable to locate it.  Puig

received a copy of the incident report charging him with the prohibited acts later that

same day.[1]

In response to the allegations, Puig acknowledges that he heard Officer Brown's

calls, but he maintains that he was trying to make the second-half of a class for which he

was already late.  He also asserts that he was unable to walk directly towards her

"because of the train."  He further denies ever making it to a grey gate or possessing a

jacket.  He also claims that "there was no else around."[2]

The Unit Disciplinary Committee ("UDC") referred the matter to the Disciplinary

Hearing Officer (DHO), and a hearing was held on February 22, 2017.  Petitioner's

request for a staff representative was granted, but he declined to call any witnesses,

opting to rely on their witness statements instead.  In his statement, Puig's requested staff

representative, L. King, CSW, noted that Officer Brown did not seek assistance with

locating the contraband as staff had done in the past.  He also reported that Puig had

never been a problem and presented four witness statements on his behalf.  However, the

only witness to affirmatively state that he was present when the incident occurred did not

fully corroborate Puig's account.  In a detailed report, the DHO found that the greater

---

[1] ECF No. 12-1

[2] ECF No. 12-1, p. 2.

2

weight of the evidence established a Code 115 violation.  Puig was sanctioned with a

disallowance of 41 days of good-conduct time, 7 days of disciplinary segregation, and 6

months loss of commissary privileges.

After exhausting administrative remedies, Petitioner filed the instant petition

alleging due process violations and insufficiency of the evidence.  He specifically claims

that he was denied staff representation and the opportunity to call witnesses at his

disciplinary hearing.  He also argues that Officer Brown never found the green jacket he

was alleged to have had, and notes that no surveillance video was reviewed or produced

to confirm her version of events.  As grounds for relief, he requests that the incident

report be expunged, and his good-conduct time be restored.

## Discussion

Puig's contentions that his due process rights were violated are unavailing.  It is

well settled that an inmate's liberty interest in his earned good time credits cannot be

denied without the minimal safeguards afforded by the Due Process Clause of the

Fourteenth Amendment. *Wolff v. McDonnell*, 418 U.S. 539 (1974).  However, prison

disciplinary proceedings are not a part of a criminal prosecution, so a prisoner is not

afforded the full panoply of rights of such proceedings. *Id.* at 566.  The evidence here

reflects that Puig received all the procedural due process to which he was entitled.  He

was given (1) advance written notice of the charges at least 24 hours prior to the

proceedings; (2) the opportunity to have assistance from a staff representative; (3) the

opportunity to present documentary evidence and call witnesses in his defense; and, (4) a

written statement by the factfinder of the evidence relied on and the reasons for the

disciplinary action taken.  *Martinez v. Young*, 653 F. App'x 835, 836 (citing *Wolff*, 418

U.S. at 563-70).  The DHO explained as follows:

> . . . .  Your denial that you never had a jacket, went around the train and directly toward her, and never went near the gray gate was considered. Furthermore, your staff representative's claim [that] the officer did not request assistance, you have never had any problems in the past, and your witness statements were considered. Just because the officer didn't ask for assistance does not mean the incident did not occur. Furthermore, she was not required to ask for assistance. Witnesses Gonzalez, Payan, and Anzardo stated that they didn't see you with a jacket or were not present when the incident occurred. Just because they didn't see you with a jacket earlier, doesn't mean you didn't have it when Ms. Brown saw you.  Inmate Hill stated he was present, but he had just finished working out and was returning to the unit. His statement contradicts yours, since you said you described yourself being 30 yards from the entrance to the camp, and he described himself being inside the camp. In addition, if you were trying to get to class, there would have only been 15 minutes of the two hour class remaining, not half the class as you described. The officer was very descriptive in what she saw. You did not provide, nor did the DHO find any credible evidence to identify the officer had fabricated the account of the incident against you. . . . .[3]

In compliance with *Wolf*, the DHO's report reflects a through consideration of the

evidence and the reasons for the disciplinary action taken.

As for Petitioner's complaint that the BOP failed to review or produce surveillance

video of the incident, nothing of record substantiates his claim that such video exists.

*McKoy v. Fox*, 587 F. App'x. 802, 804 (5th Cir. 2014) ("The DHO could not have

obtained evidence that never existed.").  Even if such evidence existed, it is not a

violation of an inmate's due process rights to be denied the opportunity to view a

surveillance video in a prison disciplinary proceeding.  The failure to observe or produce

a surveillance video does not in itself render the hearing unfair. *Id; see also Neal v.*

---

[3] ECF No. 12-1, pp. 4-5.

*Casterline,* 129 F. App'x. 113, 114 (5th Cir. 2005) (holding that the DHO's failure to observe a surveillance video did not violate inmate's due process rights); *Clements v. Dobre,* 273 F.3d 1107, at *1 (5th Cir. 2001) (unpublished) (holding that prison's failure to produce video of the incident in question did not violate inmate's due process rights). Due process is satisfied if there is "at least 'some basis in fact' or a 'modicum of evidence' to support the disciplinary conviction.'" *Superintendent, Massachusetts Corr. Inst. v. Hill,* 472 U.S. 445, 454–56, (1985)." Such evidence exists here.

In sum, the undersigned finds nothing of record to substantiate Petitioner's allegation that his disciplinary hearing failed to comport with due process, or that the evidence was insufficient to support his conviction. "Revocation of good time credits is not comparable to a criminal conviction. . . ," *Hill* 472 U.S. at 455; "only where there is no evidence whatsoever to support the decision of the prison officials" will a prison disciplinary decision be overturned. *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994). As the record here demonstrates that there was at least some evidence to support the finding of guilt, the DHO's finding should not be disturbed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections to the Report and Recommendation. The objections must be filed with the Clerk of Court, and the

objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation, within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. ' 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on November 18, 2019.


          s/ Linda R. Anderson

UNITED STATES MAGISTRATE JUDGE